IN RE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

CASE NO. 22-3686

———————————————————————————————————

UNITED STATES OFAMERICA,

                              Plaintiff-Appellee,

v.

MARLON LUNDY,

                              Defendant-Appellant.

———————————————————————————————————

Appeal from the United States District Court for the
Northern District of Ohio (Cleveland)
1:20-cr-078

The Honorable John R. Adams

———————————————————————————————————

**BRIEF of APPELLANT MARLON LUNDY**

———————————————————————————————————

Patrick J. Hanley
214 E. Fourth Street
Covington, Kentucky 41011
859-240-5080
p.hanley@att.net
Attorney for Appellant

# TABLE OF CONTENTS

Page

Table of Authorities……………………………………………………….    iii

Statement of Jurisd iction……………………………………………    1

Statement of the Issues……………………………………………    2

**ARGUMENT NO. 1   THE LOWER COURT ERRED WHEN IT RULED THAT THE HEARSAY STATEMENT OF AYLSSA KIRK, SET FORTH AND ADMITTED IN GOVERNMENT'S EXHIBIT #1, WAS ADMISSIBLE. THE COURT ALSO ERRED IN ADMITTING THE STATEMENT BECAUSE IT WAS "TETSIMONIAL"**

Statement of the Case……………………………………………….    3

Summary of the Argument…………………………………………..    15

Argument……………………………………………………………    16

Conclusion………………………………………………………….    22

Addendum-Designation of Documents…………………………….    22

Certificate of Compliance………………………………………….    22

Certificate of Service……………………………………………….    23

# TABLE OF AUTHORITES

## <u>CASES</u> Page

*Crawford v. Washington,* 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed.2d 177 (2004)………………………………………………………………… 20

*Davis v. Washington,* 547 U.S. 813, 821 (2006)…………………………... 20

*Maggard v. Ford Motor Co.,* 320 Fed. Appx. 367, 372 (6th Cir. 2009)…… 19

*United States v. Davis,* 577 U.S. 660, 666 (6th Cir. 2009)…………………. 17

*United States v. Schreane,* 331 F. 3d 548, 564 (6th Cir. 1999)…………….. 17

## <u>STATUTES AND OTHER AUTHORITIES</u>

VI Amendment, Confrontation Clause…………………………………..... 6

Fed. R. Crim. P., Rule 43(c)(1)(A)…………………………………………. 8

Fed. R. Crim. P., Rule 12.2…………………………………………………. 4

Fed. R. Evid., Rule 404(b)………………………………………………….. 6

Fed. R. Evid, Rule 803 …………………………………………………….. 6

18 U.S.C. Section 922(g)(1)…………………………………………………. 1, 3

18 U.S.C. Section 924(a)(2)…………………………………………………. 1,3

iii.

18 U.S.C. Section 3231……………………………………………………    1

18 U.S.C. Section 4241……………………………………………………    4

## STATEMENT OF JURISDICTION

On February 5, 2020, Appellant, Marlon Lundy, was indicted in the Northern District of Ohio, and charged with one-count of Felon in Possession of a Firearm, a violation of 18 U.S.C. Sections  922(g)(1) and 924(a)(2). (R. 1, Page ID ## 1-2).

After a jury trial, Appellant was found guilty as charged on May 19, 2022. (R. 77, Page ID ## 660-1). He was sentenced on July 28, 2022, to 120 months incarceration. (R. 91-1, Page ID # 741). The lower Court then entered an Amended Judgment In A Criminal Case on July 28, 2022. (R. 96, Page ID ## 734-740).

The District Court had jurisdiction of this case pursuant to 18 U.S.C. Section 3231.

Appellant filed a Notice of Appeal from the verdict and the Amended Judgment on August 9, 2022. (R. 98, Page ID # 743).

STATEMENT OF THE ISSUES

**ARGUMENT NO. 1**

**THE LOWER COURT ERRED WHEN IT RULED THAT THE HEARSAY STATEMENT OF ALTSSA KIRK WAS A PRESENT SENSE IMPRESSION AND AN EXCITABLE UTTERANCE ADMISSIBLE INTO EVIDENCE AGAINST APPELLANT. THE COURT ALSO ERRED IN THAT REGARD BECAUSE THE STATEMENT WAS "TESTIMONIAL" AND ADMISSION THEREOF VIOLATED THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT.**

2.

## STATEMENT OF THE CASE

On February 5, 2020, Appellant was charged in an Indictment filed in the U. S. District Court for the Northern District of Ohio with one-count of Felon in Possession of a Firearm, a violation of 18 U.S.C. Sections 922(g)(1) and 924(a)(2). (R. 1, Page ID ## 1-2).

On February 14, 2020, CJA Attorney Billak was appointed to represent Appellant who then entered a plea of not-guilty at Arraignment. On May 11, 2020, the Court entered an Order indicating that Appellant had filed a notice of intent to plead guilty, setting a Change of Plea Hearing/ Sentencing hearing for August 25, 2020, and ordering Pretrial/Probation to prepare a Pre-Plea Presentence Investigation Report. (R. 18, Page ID ## 62-3). On August 24, 2020, counsel for Appellant filed a Motion to Continue Sentencing in which he indicated Appellant did not want to consent to sentencing by video. (R. 22, Page ID ## 114-5). Sentencing was then continued until September 24, 2020. (R. 25, Page ID #122).

On September 15, 2020, Appellant filed a letter in which he asked the Court to remove Attorney Billak and appoint new counsel. (R. 24, Page ID ## 118-121). On September 24, 2020, the Court granted this Motion and appointed CJA Attorney Jones to represent Appellant. On November 4, 2020, a Video Status Conference was held in which defense counsel and the prosecutor participated.

On April 9, 2021, counsel for Appellant filed a Request, pursuant to Fed. R. Crim. P. Rule 12.2 and 18 U.S.C. Section 4241, for a mental examination to determine Appellant's competency to stand trial and to determine whether he was insane at the time of the offense. (R. 36, Page ID ## 146-7). On April 23, 2021, the Court entered a Superseding Order granting this Motion pursuant to 18 U.S.C. Sections 4241 and 4242 and ordered Appellant be transferred to an appropriate study site capable of conducting both a competency evaluation and an evaluation of Appellant's legal sanity at the time he is alleged to have committed the offense herein. (R. 38, Page ID # 149).

On September 30, 2021, CJA Attorney Jones filed a Motion to Withdraw. (R. 40, Page ID ## 155-6). Attached thereto was a letter from Appellant telling Jones he wished terminate him and asking that he file a Motion to Withdraw. (R. 40-1, Page ID # 157).

On October 13, 2021, a letter from the Bureau of Prisons was filed. Attached to that letter were two reports concerning Appellant's competency and legal sanity at the time of the offense. (R. 41, Page ID ## 158-175). The first report addressed his competency to stand trial and whether Appellant was suffering from a mental defect that made him unable to understand the nature and consequences of the proceedings against him or to assist properly in his own defense.  That report

4.

concluded that he was competent. (R. 41, Page ID ## 160-171). The second report

addressed whether he was sane at the time of offense.  That report concluded that,

while Appellant refused to complete the forensic evaluation, which included

providing his account of the events leading up to his arrest, earlier in the evaluation

he did spontaneously speak about the night of his arrest. It was concluded that

there was no evidence to indicate Appellant suffered from a mental disease or

defect that rendered him unable to appreciate the nature, quality or wrongfulness of

his actions during the time period of the alleged offense. (R. 41, Page ID ## 172-

175).

On October 19, 2021, the Court granted Attorney Jones' Motion to Withdraw.

(R. 43, Page ID #177). On December 15, 2021, CJA Attorney Timothy Ivey filed a

Notice of Appearance on behalf of Appellant. (R. 45, Page ID # 180).  On January

12, 2022, the lower Court held a Video Status Conference and set a trial date of

May 16, 2022.

On February 15, 2022, the lower Court held a Video Pretrial Conference that

only counsel participated in. The Trial Date of May 16, 2022, was reestablished

and the hearing to consider the Jury Questionnaires was set for May 13, 2022.

On May 3, 2022, the United States filed its Trial Brief. (R. 61, Page ID ##

234-245). In that document, the Government indicated its intention of introducing

5.

certain out of court statements against Appellant that were not going to be supported by the testimony of a witness. The statements consisted of a 911-call and the statement of Alyssa Kirk which the Government maintained were admissible under Rule 803, Fed. R. Evid. as a present sense impression and an excited utterance. It was also indicated that those statements would be offered as res gestae evidence under Rule 404(b), Federal Rules of Evidence.

On May 9, 2022, the defense filed its Trial Brief, in which it indicated its objection to those out of court statements claiming the exceptions to the hearsay rule did not apply and claiming that admission of those statements violated the *Confrontation Clause of the VI Amendment*. It did not address the res gestae argument. (R. 63, Page ID ## 247-252).

On May 13, 2022, the Court intended to commence review of the Jury Questionnaire Review to determined what prospective jurors should be removed for cause.  (R. 108, Page ID ## 775-794). However, the Court was notified by the US Marsal that Appellant had refused to be transported to the Court from jail (Page # 777); that his attorney had not had an opportunity to speak with him (Page # 778); and, that his attorney informed the Court that Appellant did not want to the trial to go forward because he needed mental health treatment prior to going to trial (page # 779). The Court then expressed reluctance to go forward with

6.

consideration of the Jury Questionnaires without Appellant having the opportunity to consult with counsel. (Page # 780-781). It also stated that it would not have Appellant forcibly transported from the jail to the Courthouse for trial because it did not believe it productive to forcibly have a defendant brought to Court-it was not in the best interest of staff or anyone. (Page # 783).

Later during that proceeding, the Court then was able to engage Appellant in a conversation on the phone. (Page # 784). Appellant confirmed that he chose not to come to Court for jury selection; that he felt he was not going to get a fair trial; that the evidence he was trying to use was not being presented; that he had no paperwork from his mental health evaluation. (Pages ## 784-787). The Court then concluded that it was going to reschedule the hearing on the Jury Questionnaires until Appellant had the opportunity to go over the issues he raised with his attorney. (Page # 787). Appellant then claimed that his attorney Ivey was ineffective and that, as a result, he did not want to be represented by him. (Page # 789). The Court decided to deal with the jury questionnaires on May 16th. (Page # 783).

On May 16, 2022, the Court held a hearing on the Jury Questionnaires. Appellant was present for this hearing. (R. 113, Page ID ## 1011-1062). He initially was given the opportunity to advance certain objections to the Court proceeding. The

court overruled those objections. (Page ID ## 1014-1015). Counsel for the

Government then confirmed that he did not intend to play the 911-call which was

one of the statements objected to a hearsay grounds. (Page ID ## 1055).

Subsequently, at the hearing on May 16, 2022, the counsel for Appellant

indicated that his client did not intend to come to Court for the proceedings on May

17, 2022. The Court then informed Appellant it was in his best interests to come to

Court; however, it again stated it would not have him forcibly brought over to

Court. (R. 113, Page ID ## 1060-1062).

On May 17, 2022, the Court entered a Sealed Order supplementing its reasons

why Appellant's objections to the trial lacked merit and also addressed Appellant's

position that he would not be appearing for his trial. (R. 73, Page ID ## 643

647).

Specifically, the Court held that defense counsel's objection to the trial proceeding

going forward without Appellant being present was without merit on the basis of

Fed. R. Crim. Pro. 43(c)(1)(A).

The Court then filed an Order resolving the issues raised in the parties respective

Trial Briefs. (R. 74, Page ID ## 648-651). In that Order, the Court ruled that the

out-of-court statements of witness Kirk were admissible even though hearsay

because of the "excited utterances and "present sense impressions" exceptions. The

8.

Court also ruled that those statements were admissible as "res gestae" evidence.

On May 17, 2022, voir dire was held-a jury was selected and sworn. Counsel for both sides then made their Opening Statements. The Court then advised that defense counsel would have a room set aside if Appellant wished to speak to him and discuss the issues in the case and his clerk was available the next two days in the morning depending on Appellant's willingness to come to court and participate. (R. 109, Page ID ## 795-817).

In the Government's Opening Statement, it alleged that the evidence would show that Appellant, who was a convicted felon, was in possession of a firearm on December 7, 2019, and, that he later, during booking, made statements admitting that the firearm was his. (R. 109, Page ID #805). Defense Counsel asserted in his Opening that the Government failed to produce DNA evidence or fingerprint evidence to support Appellant's possession of the firearm; that police officers will make the statement to the effect that Ms. Kirk  made allegations to them that Appellant possessed a gun the evening of December 7 but that Kirk was not going to testify so that the jury could assess her demeanor and credibility; and, that when Appellant made the statements during booking he was heavily intoxicated. (R. 109, Page ID ## 809-813).

On May 18, 2022, Defense Counsel announced that he did speak with Appellant after court the day before and that he expected him to come to court today but he had not. The Court then stated that he had been told by the marshals' staff that Appellant had refused to be transported to court that morning and had refused to participate via video conferencing. (R. 110, Page ID ## 820-821). The Court decided to proceed without him.

The Government first called Donald Martin, an officer with the Ashtabula City Police Department who was on patrol the night of December 7. He testified dispatch received a 911-call for a domestic disturbance at a trailer park on Michigan Avenue. Apparently, a neighbor had made the call. Upon arrival on the scene, he spoke to a Ms. Kirk and a Ms. Ernst who were present in the trailer. Ernst lived at the trailer and Kirk was visiting. The disturbance was apparently between Appellant and an unknown male both of whom were in the trailer. (R. 110, Page # 834-8350.  When Martin arrived, Appellant was no longer at the scene. They informed Martin that he could be found at the Ashbrook Apartments that were close by and that he was driving a red Pontiac. Martin told the woman to lock themselves in the trailer and to call back if he returned.

Approximately 15 minutes later, a second 911-call for a disturbance at the same location was received. When Martin returned to the trailer, shortly after receipt of

10.

the call to the police, he was told by Kirk that Appellant had returned and had

pointed a gun at her and her friend. Everything he had testified to was recorded on

his body camera. The Government introduced the tape of the second event,

including the statement of Kirk, that occurred that evening as Exhibit #1 and

played it for the jury. (R. 110, Page ID ## 824-838). Defense counsel had objected

to admission of this Exhibit in his Trial Brief (R. 63, Page ID ## 247-252) and

objected again at the end of the Government's case. (R. 110, Page ID # 916).

Retired Police Officer Chad Brown was then called by the Government. (R. 110,

Page ID ## 839-859). He testified that he arrived at the trailer park a few seconds

after Officer Martin. Appellant had come over uninvited and was intoxicated. He

was not at the scene when the officers had arrived. Kirk and Ernst indicated that

Appellant was driving a red Pontiac been told that he was driving a red Pontiac.

Since he was no longer on the scene, Brown left the trailer and began to look for

Appellant. Shortly thereafter, they received a second call that Appellant had

returned to the trailer park and had a gun.

A short time later, he located Appellant in a nearby apartment complex in a

parking lot. He was in his car and two individuals were standing outside the car.

He approached Appellant and arrested him. A gun was in plain view on the

passenger seat. Appellant denied that the gun was his and the witness did not

11.

observe Appellant in possession of it. Clips from his body camera were then
introduced as Government Exhibit 2.1 and played for the jury. (Page #847)
Government's Exhibit 4 was a picture of the gun recovered from Appellant's car.

While Appellant was being booked, he was on the phone talking to someone and
during that conversation said that the gun was his but that drugs found on the
scene were not. The Government then introduced Government Exhibit 2.3 which
consisted of a portion of Officer Brown's body camera. Contained on that camera
were the statements Appellant made during the booking process.

Officer Spencer Gale was then called by the Government. (R. 110, Page ID ##
860-870). Her body camera was operational during Appellant's booking process.
At that point, the Government introduced Government's Exhibit 3.1 which
consisted of the booking process she was a witness to. A second call was recorded
as was identified as Government's Exhibit 3.2. This was a call from Appellant to
Alyssa .

During the booking process, Appellant told Officer Gale that he would take the
gun charge but that the drugs were not his. (Page # 868).

The Government's next witness was William Parkomaki.  He test fired the
weapon to determine that it was operable. (R. 110, Page ID ## 871-878).

The Government then called Elizabeth Gardner. She testified that she was with

12.

ATF. She ordered and obtained the certified convictions of Appellant. She identified Government's Exhibit 6 which was the certified conviction of Appellant, which was a conviction of in case Number CR-07-495423-A of Felonious Assault from Cuyahoga County. She also testified that since Appellant had made statements that the gun in question was his coupled with the fact that he was alone in the vehicle where the gun was found, there was no reason to have DNA testing or fingerprint testing done. (R. 110; Page ID ## 879-893).

The Government next called Kelvin Gearheart. He testified that he was employed by the Ohio Bureau of Criminal Investigation as a Senior Fingerprint Examiner. He compares fingerprints submitted to us on a fingerprint card to fingerprints that they already have on our files and our databases. He determined that the prints from his current arrest matched the fingerprints of the fingerprint card generated when Appellant was convicted of felonious assault in 2007. (R. 110, Page ID ## 899-902).

The prosecution final witness was Corey Miles who testified he was a special agent with the ATF. (R. 110, Page ID ## 905-912). Specifically, he testified that he was a nexus designated expert, i.e., determines were a firearm was manufactured. He testified that the gun in question was a Sig Sauer, model P938, a 9 millimeter semiautomatic pistol and that it was manufactured in Newington, New Hampshire.

13.

At that point the Government rested. It then moved to admit the exhibits it had introduced at trial. Defense Counsel objected to Government's Exhibit # 1 which was the first body camera clip when officer Martin went to the residence of the ladies and was the subject of his trial brief. That objection was overruled. (R. 110, Page ID #916).

Upon reconvening after lunch, Defense Counsel indicated he did speak with Appellant and that he wished to testify in his own defense on the next day. (R. 110, Page ID # 921). He did not anticipate that the trial would be so short. Everyone told him that the last day of trial would be Thrusday. The Court decided to continue the matter until Thursday to allow Appellant to testify in person. (R. 110, Page ID ## 924-925).

On Thursday, May 19, 2022, the Court was notified by the Marshall's Service that Appellant had refused to be transported to Court to testify on his own behalf. (R. 75, Page ID # 652 and R. 75-1, Pages ## 653-657). The Court decided to proceed without him. At that time the Defense asserted that it did not intend to present any evidence and therefore rested.

After instructions were given and the parties made closing arguments, the jury returned a verdict of guilty. (R. 111, Page ID # 998, and R. 77, Page ID ## 660-661). On July 28, 2022, he was sentenced to 120 months incarceration. (R. 105,

14.

Page ID # 769).

On July 28, 2022, a Judgment In A Criminal Case was entered (R. 94, Page ID ## 723-729). Because that document incorrectly reflected that Appellant's guilt was based on a guilty plea, an Amended Judgment In A Criminal Case was entered on Jury 29, 2022, reflecting that Appellant's guilt was based on a jury finding. (R. 96, Page ID ## 734-740).

Appellant filed a Notice of Appeal on August 9, 2022. (R. 98, Page ID # 743).

## SUMMARY OF ARGUMENT

The lower Court erred when it admitted the hearsay statement of Aylssa Kirk against Appellant when it found that the statement was admissible as a present sense impressions and a excited utterance pursuant to Rule 802. Admission of that statement also violated the Confrontation Clause of the Sixth Amendment.

ARGUMENT  NO.1

THE LOWER ERRED WHEN IT IMPROPERLY AMITTED THE
STATEMENT OF ALYSSA KIRK MADE TO OFFICER MARTIN
HOLDING THAT IT WAS NOT HEARSAY IN THAT THEY WERE A
PRESENT SENSE IMPRESSION AND AN EXCITED UTTERANCE.
ADMISSION OF THE STATEMENT THAT WAS "TESTIMONIAL"
ALSO VIOLATED THE CONFRONTATION CLAUSE OF THE SIXTH
AMENDMENT.

***Background***

On the night of December 8, 2019, Ashtabula, Ohio, law enforcement Donald

Martin received a message from dispatch of a domestic dispute located in at a

trailer park on Michigan Avenue. Upon arrival on the scene, he spoke to two

woman, Aylssa Kirk and her friend Courtney Ernst. He was informed that the

disturbance had involved Kirk and her children father, the Appellant. Both woman,

according to Martin, were "excited, concerned that he had pushed his way into the

trailer." (R. 110, Page ID # 827).  After speaking with the women, he left them

statement forms and left because Appellant had left the scene. The women had said

that he could probably be located, which was within walking distance of their

trailer and that he was driving a red Pontiac.

About 15 minutes later, dispatch received a second call that Appellant had returned

to the trailer. Accordingly, Officer Martin returned to the trailer. After he arrived,

16.

Kirk told him Appellant had a gun and pointed it at her and her friend, Courtney Ernst. Martin was wearing a body cam that night that recorded the events that occurred including the statement of Kirk. The Government than had the body cam marked as Government's Exhibit # 1 and played it for the jury. (R. 110, Page ID # 829).  Subsequently, at the close of the Government's case, the Government sought to offer Exhibit #1into evidence. Defense Counsel objected and the lower Court overruled that objection. The item was then admitted with even though Appellant did not have the opportunity to cross-examine her.

   Consequently, admission of Governments Exhibit # 1and the testimony of Officer Martin violated Rule 802, Fed. R. Evid. in that both contained the statement of Kirk which was hearsay. Moreover, admission violated the *Confrontation Clause of the VI Amendment* in that the statement of Kirk was offered to prove the truth of the matter asserted.

**Standard of Review**

   All evidentiary rulings, including hearsay, are reviewed for abuse of discretion. *United States v. Davis,* 577 F.3d  660, 666 (6th Cir. 2009). "An abuse of discretion will be found upon a 'definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'". *United States v. Schreane,* 331 F.3d 548, 564 (6th Cir. 1999).

17.

**The Law**

Hearsay is a person's oral assertion or statement that the declarant does not make while testifying at the current trial of hearing, offered in evidence to prove the truth of the matter asserted. Rule 801(c), Fed. R. Evid. Hearsay is not admissible unless the Federal Rules provide otherwise. Rule 802, Fed. R. Evid. Exceptions to the exclusion of hearsay, regardless of whether the declarant is available as a witness, include 1) Present Sense Impressions, a statement describing or explaining an event or condition, made while or immediately after the declarant perceived it; and, 2) Excited Utterance is a statement related to a startling event or condition made while the declarant was under the stress of excitement that it caused.

The confrontation clause of the Sixth Amendment prohibits the admission of "testimonial statements" of a witness that does not appear at trial. In the context of a police interrogation, statements are "testimonial" when there is not an ongoing emergency and the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Present Sense Impression*

The record does not establish that the statement of Kirk was made to Officer Martin immediately after she perceived the event. Martin testified he did not recall the exact time between when he received the call from dispatch and when he

18.

arrived at the trailer. He then speculated, "I would say minutes". (R. 110, Page ID ## 826). How long after he arrived did he take the statement from Kirk? She did not make the 911 call, therefore there is an additional period of time that must be added on to Martin's timeline. Fact is, the record does not adequately demonstrate the period of time between when Kirk perceived the event and when she told Martin about it. Consequently, it is not properly characterized as a present sense impression.

*Excited Utterance*

An excited utterance is considered trustworthy because "circumstance may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscience fabrication." Fed. R. Evid. Advisory committee's notes. *Maggard v. Ford Motor Co.,* 320 Fed. Appx. 367, 372 (6th Cir. 2009). "A hearsay statement is admissible under the excited utterance exception if "(1) there [is] an event startling to cause nervous excitement; (2) the statement [is] made before there is an opportunity to contrive or misrepresent; and (3) the statement [is]made while under the stress of the excitement caused by the event." Was the statement the result of reflective thought or whether it was a spontaneous reaction to the exciting event?

In this case, when Officer Martin interviewed Alyssa Kirk during his second trip

19.

to the trailer, she indicated that Appellant had pointed a gun in her face. Martin responded that she didn't appear very upset for someone who just had a gun pointed in her face. He explained that he said that because "[s]he just kind of spoke it as a matter of factly." (R. 110, Page ID #830).

Consequently, the record reveals that Martin did not believe Kirk was under stress and made the statement while in the state of excitement. Clearly, in view of the fact Martin was a first-hand witness to the event his impression must be considered paramount. Consequently, Kirk's statement  was not an excited utterance and did not constitute an exception to the hearsay rule pursuant to Rule 802.

*Confrontation Clause*

Moreover, the statement in this case was used as hearsay, i.e., the record shows it was offered for the truth of the matter asserted. Kirk statement was offered to show that indeed Appellant possessed the firearm in question. It was, in fact, the principal evidence offered at trial to prove Appellant possessed the firearm. Kirk was presumably available to testify but the Government chose not to call her and provide the defense with an opportunity to cross-examine. Therefore, her statement was testimonial evidence that required proof of unavailability and a prior opportunity for cross-examination. *Crawford v. Washington,* 541 U.S. 36, 68, 124

20.

S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

The Confrontation Cause of the Sixth Amendment provides: " ' In all criminal
prosecutions, the accused shall enjoy the right…to be confronted with the
testimonial statements of a witness who did not appear at trial unless he was
unavailable to testify, and the defendant had had a prior opportunity for cross-
examination." *Davis v. Washington,* 547 U.S. 813, 821, (2006).

So then, what are "testimonial statements" in the context of police interrogation.
"Statements are nontestimonial when made in the course of police interrogation
under circumstances objectively indicating that the primary purpose of the
interrogation is to enable police assistance to meet an ongoing emergency. They
are testimonial when the circumstances objectively indicate that there is no such
ongoing emergency, and that the primary purpose of the interrogation is to
establish or prove past events potentially relevant to later criminal prosecution." *Id.*
In this case, the statement of Kirk was made in response to interrogation by Martin
that were not made to assist in an ongoing emergency but were obtained for the
purpose to prove events of past events to be used for a later prosecution.

Accordingly, the statement of Kirk was testimonial and admission of that
statement without providing the Appellant with the opportunity to cross-exam

21.

violated the Confrontation Clause of the Sixth Amendment.

## CONCLUSION

For the reasons set forth above, this matter should be remanded to the lower

Court for proceedings not inconsistent with this brief.

/s/Patrick J. Hanley
Patrick J. Hanley

## ADDENDUM

Indictment            R. 1, Page ID ## 1-2

Trial Brief of Government    R. 61, Page ID ## 234-245

Trial Brief of Defense      R. 63, Page ID ## 247-252

Order    R. 74, Page ID ## 648-651

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief complies with the length requirements set forth in
FRAP Rule 32(a)(7)(A).

/s/ Patrick J. Hanley
Patrick J. Hanley

22.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Appellant's Brief was filed with this Court on March 13, 2023, thus resulting in service on counsel for all parties to this case.

/s/ Patrick J. Hanley
Patrick J. Hanley

23.